Filed 4/6/17

# IN THE SUPREME COURT OF CALIFORNIA

SHARON McGILL,     )
           )
  Plaintiff and Respondent;  )
           )
           )   S224086
           )
  v.         )
           )  Ct.App. 4/3 G049838
CITIBANK, N.A.,     )
           )   Riverside County
  Defendant and Appellant.  ) Super. Ct. No. RIC1109398
_____)

In previous decisions, this court has said that the statutory remedies available for a violation of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and the false advertising law (*id*., § 17500 et seq.) include public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. (*Cruz v. PacifiCare Health Systems*, *Inc.* (2003) 30 Cal.4th 303, 315-316 (*Cruz*); *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077 (*Broughton*).) The question we address in this case is the validity of a provision in a predispute arbitration agreement that waives the right to seek this statutory remedy in any forum. We hold that such a provision is contrary to California public policy and is thus unenforceable under California law. We further hold that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) does not preempt this rule of California law or require enforcement of the waiver provision. We therefore reverse the judgment of the Court of Appeal.

1

# I. FACTUAL BACKGROUND

In 2001, plaintiff Sharon McGill opened a credit card account with defendant Citibank, N.A. (Citibank) and purchased a "credit protector" plan (Plan). Under the Plan, Citibank agreed to defer or to credit certain amounts on McGill's credit card account when a qualifying event occurred, such as long-term disability, unemployment, divorce, military service, or hospitalization. Citibank charged a monthly premium for the Plan based on the amount of McGill's credit card balance.

McGill's original account agreement did not contain an arbitration provision. In October 2001, Citibank sent her a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (2001 Notice), which amended the original agreement by adding the following arbitration provisions: "Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called 'Claims')." "All Claims relating to your account or a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; . . . and Claims made independently or with other claims . . . . Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis." "This arbitration provision is governed by the Federal Arbitration Act (the 'FAA')." "Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or

2

against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court."

The 2001 Notice stated that McGill had the option to decline the arbitration provision and to continue using her credit card under the existing terms until the "later" of "the end of [her] current membership year or the expiration date on [her] card(s)." McGill did not decline and, according to Citibank, the arbitration provision became effective on November 30, 2001.

In February 2005, Citibank sent McGill a "Notice of Change in Terms, Right to Opt Out, and Information Update" (2005 Notice), which informed her of changes to the arbitration provisions and to several other aspects of her account agreement. The 2005 Notice contained an opt-out provision similar to the opt-out provision in the 2001 Notice. Again, McGill did not opt out and continued using her credit card. In January 2007, Citibank sent McGill a complete copy of her account agreement, which included arbitration provisions identical to those quoted above.

In 2011, McGill filed this class action based on Citibank's marketing of the Plan and the handling of a claim she made under it when she lost her job in 2008. The operative complaint alleges claims under the UCL, the CLRA, and the false advertising law, as well as the Insurance Code. For relief, it requests, among other things, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices.

Pursuant to the arbitration provision, Citibank petitioned to compel McGill to arbitrate her claims on an individual basis. The trial court granted the petition in part and denied it in part based on *Broughton* and *Cruz*, which together established the following rule: Agreements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false advertising law are not enforceable in California. Applying this rule — known as the *Broughton-Cruz*

3

rule — the trial court ordered McGill to arbitrate all claims other than those for injunctive relief under the UCL, the false advertising law, and the CLRA. The Court of Appeal reversed and remanded "for the trial court to order all of McGill's claims to arbitration," concluding that the FAA, as recently construed by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), preempts the *Broughton-Cruz* rule.

During oral argument in the Court of Appeal, McGill asserted that the arbitration agreement is unenforceable because it purports to prohibit her from pursuing claims for public injunctive relief, not just in arbitration, but *in any forum*. The Court of Appeal did not mention this argument in its opinion. McGill made the argument again in a petition for rehearing, which the Court of Appeal denied without addressing the merits of the issue.

McGill filed a petition for review in this court, asserting (1) the Court of Appeal erred in finding FAA preemption of the *Broughton-Cruz* rule, and (2) the arbitration provision is invalid and unenforceable because it waives her right to seek public injunctive relief in any forum. For reasons explained below, we agree with her latter claim and we do not address the former.

## II. DISCUSSION

We begin by summarizing the California consumer protection laws here at issue. The Legislature enacted the CLRA "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.) "[T]o promote" these purposes, the Legislature directed that the CLRA "be liberally construed and applied." (*Ibid.*) After setting forth a list of unlawful "methods of competition and unfair or deceptive acts or practices" (*id.*, § 1770), the CLRA authorizes any consumer who has been damaged by an unlawful method, act, or practice to bring an action for various forms of relief, including "[a]n order enjoining the methods, acts, or practices" (*id.*, § 1780, subd. (a)(2)). The CLRA also expressly declares that

4

"[a]ny waiver by a consumer" of the CLRA's provisions "is contrary to public policy and shall be unenforceable and void." (*Id.*, § 1751.)

The UCL addresses "unfair competition," which "mean[s] and include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law]." (Bus. & Prof. Code, § 17200.) Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike*, *Inc.* (2002) 27 Cal.4th 939, 949.) "Actions for relief" under the UCL may be brought by various government officials and "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) "[T]he primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 319.) In this regard, the UCL provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof. Code, § 17203.)

The false advertising law makes unlawful "untrue or misleading" statements designed to "induce the public to enter into any obligation" to purchase various goods and services. (Bus. & Prof. Code, § 17500.) Like the UCL, the false advertising law allows an action for relief to be brought by specified government officials and "by any person who has suffered injury in fact and has lost money or property as a result of a violation." (Bus. & Prof. Code, § 17535.) It also authorizes injunctive relief, stating: "Any person, corporation, firm, partnership, joint stock company, or any other association or organization which

violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction.  The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful."  (*Ibid*.)

In *Broughton* and *Cruz*, this court discussed the nature of the injunctive relief available under these statutes.  It distinguished between private injunctive relief — i.e., relief that primarily "resolve[s] a private dispute" between the parties (*Broughton*, *supra*, 21 Cal.4th at p. 1080) and "rectif[ies] individual wrongs" (*id*. at p. 1080, fn. 5), and that benefits the public, if at all, only incidentally — and public injunctive relief — i.e., relief that "by and large" benefits the general public (*id*. at p. 1079) and that benefits the plaintiff, "if at all," only "incidental[ly]" and/or as "a member of the general public" (*id*. at p. 1080, fn. 5).  For example, the court explained in *Broughton*, an injunction under the CLRA against a defendant's deceptive methods, acts, and practices "generally benefit[s]" the public "directly by the elimination of deceptive practices" and "will . . . not benefit" the plaintiff "directly," because the plaintiff has "already been injured, allegedly, by such practices and [is] aware of them."  (*Ibid*.)  "[E]ven if a CLRA plaintiff stands to benefit from an injunction against a deceptive business practice, it appears likely that the benefit would be incidental to the general public benefit of enjoining such a practice."  (*Ibid*.)  Likewise, the court explained in *Cruz*, an injunction under the UCL or the false advertising law against deceptive advertising practices "is clearly for the benefit of . . . the general public"; "it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff."  (*Cruz*, *supra*, 30 Cal.4th at pp. 315-316.)  To summarize, public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has "the primary purpose and effect of" prohibiting

6

unlawful acts that threaten future injury to the general public. (*Broughton*, *supra*, at p. 1077.) Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff — or to a group of individuals similarly situated to the plaintiff — does not constitute public injunctive relief.

As noted *ante*, *Broughton* and *Cruz* collectively established the following rule: Agreements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false advertising law are not enforceable in California. As also noted *ante*, in the proceedings below, the parties and the courts focused on the effect of this rule on Citibank's petition to compel McGill to arbitrate her claims on an individual basis. The trial court applied the rule in declining to order arbitration of claims for injunctive relief under the UCL, the false advertising law, and the CLRA. The Court of Appeal, applying the high court's post-*Cruz* decisions, concluded that the rule was preempted by the FAA and ordered all claims to arbitration.

Although we granted review to consider the Court of Appeal's conclusion, it is now clear that the *Broughton-Cruz* rule is not at issue in this case. As detailed above, late in the Court of Appeal proceedings, McGill asserted that the arbitration provision purports to preclude her from seeking public injunctive relief *in any forum*. She repeats that assertion in this court, citing the following clauses of the arbitration provision: (1) "[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute"; (2) "[t]he arbitrator will not award relief for or against anyone who is not a party"; (3) "the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis"; and (4) "neither you, we, nor any other person may pursue the Claims in arbitration as a class action, private attorney general action or other representative action." At oral argument before us, Citibank agreed with McGill's reading of the arbitration provision.

7

Given the parties' agreement, we do not independently analyze the arbitration provision, but proceed based on the parties' shared view that it purports to preclude McGill from seeking public injunctive relief in arbitration, in court, or *in any forum*. Because, as Citibank states, the parties "elected . . . to exclude public injunctive relief from arbitration," the *Broughton-Cruz* rule — which applies only when parties have *agreed* to arbitrate requests for such relief — is not at issue, and we need not consider the rule's vitality in light of the high court's post-*Cruz* FAA decisions. Instead, the question before us is whether the arbitration provision is valid and enforceable insofar as it purports to waive McGill's right to seek public injunctive relief *in any forum*.

In answering this question, we first conclude that McGill's complaint does, in fact, appear to seek the type of public injunctive relief that *Broughton* and *Cruz* identified. The UCL claim alleges in part that Citibank's "advertising and marketing" of the Plan "is unfair, deceptive, untrue and misleading" in various respects, and that Citibank "continue[s] to violate" the UCL by selling the Plan "with advertising that includes false, misleading or deceptive information, and material omissions." For relief, it asks, among other things, for an order requiring Citibank "to immediately cease such acts of unfair competition and enjoining [Citibank] from continuing to conduct business via the unlawful, fraudulent or unfair business acts and practices complained of herein and from failing to fully disclose the true nature of its misrepresentations."

The false advertising claim incorporates the allegations of the UCL claim and additionally alleges in part that Citibank "engaged in unfair, deceptive, untrue, and misleading advertising, relating to" the Plan, and "disseminated or caused to be disseminated materially untrue, and misleading advertising statements with the intent to either directly or indirectly induce members of the public . . . to purchase" the Plan. For relief, it requests, among other things, "injunctive relief."

The CLRA claim incorporates the allegations of the UCL and false advertising law claims and additionally alleges in part that Citibank made

8

"representations and omissions" about the Plan that "were false, deceptive and/or misleading," and that Citibank "continue[s] to violate the CLRA by making misrepresentations and concealing material facts relating to" the Plan "and by selling the [P]lan based upon these misrepresentations and material omissions." For relief, it requests, among other things, "injunctive relief."

More generally, the complaint's prayer for relief requests, among other things: (1) a declaration that Citibank violated the UCL, the false advertising law, and the CLRA by "disseminating . . . unfair, deceptive, or misleading advertising, and material omissions"; (2) "injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code sections 17200 *et seq.*" and "California Civil Code section 1750 *et seq.*"; (3) entry of an order requiring Citibank "to immediately cease the wrongful conduct as set forth above" and "enjoining" Citibank "from continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practices complained of herein"; and (4) entry of a judgment "for injunctive relief." In light of these allegations and requests for relief, which Citibank ignores, we disagree with Citibank that McGill has failed adequately to specify "the actual nature of the injunctive relief" she seeks or "to explain how the public at large would benefit from" that relief.[1]

We also disagree with Citibank that, because "McGill has not established that any of the alleged conduct she challenges is ongoing or likely to recur," she "has failed to establish that the relief she seeks is, in fact, public injunctive relief." As detailed *ante*, McGill alleges in her complaint that the conduct *is* ongoing. At this stage of the proceeding — a motion to compel arbitration — it is premature to

---

[1]     As Citibank observes, McGill's complaint also requests compensatory, monetary and punitive damages, and "injunctive relief in the form of restitution and/or disgorgement." These remedies do not constitute public injunctive relief within the meaning of *Broughton* and *Cruz.* (*Cruz*, *supra*, 30 Cal.4th at pp. 317-320; *Broughton*, *supra*, 21 Cal.4th at p. 1084.)

consider whether she "has . . . established" these allegations with proof or how her failure to do so would ultimately affect her request for injunctive relief.  (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 133 (plur. opn. of George, C. J.) ["The mere fact that a defendant refrains from unlawful conduct during the pendency of a lawsuit does not necessarily preclude the trial court from issuing injunctive relief to prevent a posttrial continuation of the unlawful conduct."]; *Robinson v. U–Haul Co. of California* (2016) 4 Cal.App.5th 304, 315 ["[T]here is no hard-and-fast rule that a party's discontinuance of illegal behavior makes injunctive relief . . . unavailable.  'While voluntary cessation of conduct may be a factor in a court's exercise of its equitable jurisdiction to issue an injunction, it is not determinative.' "].)  In arguing otherwise, Citibank, quoting *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 91, asserts that " 'the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.' "  But Citibank cites no authority — and we are aware of none — applying this principle, which governs an effort to resist arbitration of a claim the parties *agreed* to arbitrate, to an effort to pursue a claim the parties *excluded* from arbitration.

We next address the following threshold issue:  whether post-*Cruz* amendments to the UCL and the false advertising law eliminated the ability of private plaintiffs like McGill to seek public injunctive relief under those laws.[2] Before 2004, these statutes authorized action by "any person acting for the interests of itself, its members or the general public."  (Bus. & Prof. Code, former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198 [UCL]; *id.*, former §

---

[2]    We invited the parties and amicus curiae to submit supplemental briefs on this issue.  Citibank's response, in addition to discussing the UCL and the false advertising law, added that public injunctive relief is unavailable in this case under *the CLRA* because the CLRA "does not apply to credit cards in the first place." Because Citibank did not raise this issue in earlier briefing and it is outside the scope of our request for supplemental briefing, we decline to address it.

10

17535, as amended by Stats. 1972, ch. 711, § 1, p. 1299 [false advertising law].)

In 2004, the voters, by passing Proposition 64, amended these statutes to provide that private individuals may (1) file an action for relief only if they have "suffered injury in fact and [have] lost money or property as a result of" a violation (Bus. & Prof. Code, §§ 17204, 17535), and (2) "pursue representative claims or relief on behalf of others only if [they] meet[] [these] standing requirements . . . and compl[y] with Section 382 of the Code of Civil Procedure," which relates to representative suits (*id.*, §§ 17203, 17535). The amended statutes also specify that "these limitations do not apply to claims brought . . . by the Attorney General, or a[ny] district attorney, county counsel, city attorney, or city prosecutor in this state." (*Ibid*.) In uncodified sections, Proposition 64 identified the "[f]il[ing] [of] lawsuits" by private attorneys "on behalf of the general public" as a misuse of the unfair competition laws (Prop. 64, § 1, subd. (b)(4), 4D West's Ann. Bus. & Prof. Code (2008 ed.) foll. § 17203, p. 409, hereafter Annotated Code), and stated the voters' "intent . . . that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public" (*id*., § 1, subd. (f)).

We conclude that these provisions do not preclude a private individual who has "suffered injury in fact and has lost money or property as a result of" a violation of the UCL or the false advertising law (Bus. & Prof. Code, §§ 17204, 17535) — and who therefore has standing to file a private action — from requesting public injunctive relief in connection with that action. A person who meets these requirements is "fil[ing]" the "lawsuit[]" or "action[]" on his or her own behalf, not "on behalf of the general public." (Prop. 64, § 1, subds. (b)(4)), (f), Ann. Code, *supra*, at p. 409.) This remains true even if the person seeks, as one of the requested remedies, injunctive relief "the primary purpose and effect of" which is "to prohibit and enjoin conduct that is injurious to the general public." (*Broughton*, *supra*, 21 Cal.4th at p. 1077.) We find nothing in the ballot materials for Proposition 64 suggesting that voters, in stating their intent "that only

11

the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public" (Prop. 64, § 1, subd. (f), Ann. Code, *supra*, at p. 409), meant to preclude individuals who meet the standing requirements for bringing a private action from requesting such relief. On the contrary, the Attorney General's "Official Title and Summary" explained that, under Proposition 64, "if [an] individual was actually injured by, and suffered financial/property loss because of, an unfair business practice," he or she could "sue" for "private enforcement of [the] unfair business competition laws." (Voter Information Guide, Gen. Elec. (Nov. 2, 2004), official title and summary of Prop. 64, p. 38.) As we have already noted *ante*, "an injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 319; see *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 789 [ "[i]f a party has standing under" the UCL, "it may seek injunctive relief"].)

For several reasons, we also conclude that a request for such relief does not constitute the "pursu[it]" of "representative claims or relief on behalf of others" within the meaning of Business and Professions Code sections 17203 or 17535, such that "compli[ance] with Section 382 of the Code of Civil Procedure" is required. First, reading the phrase "on behalf of others" (Bus. & Prof. Code, §§ 17203 or 17535) as referring to the general public would create conflict with other parts of Proposition 64. This reading would seem to *authorize* private individuals to proceed *on behalf of the general public* if they "compl[y] with Section 382 of the Code of Civil Procedure" (Bus. & Prof. Code, §§ 17203, 17535), which would conflict with the voters' stated intent "that only the California Attorney General and local public officials be authorized to file and prosecute actions *on behalf of the general public*" (Prop. 64, § 1, subd. (f), Ann. Code, *supra*, at p. 409, italics added). We must, if possible, "harmonize all of the relevant provisions of" Proposition 64. (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1227 [construing Prop. 103].)

Second, we have held that the phrase "compl[y] with Section 382 of the Code of Civil Procedure" (Bus. & Prof. Code, §§ 17203, 17535) "imposes a requirement that the action be brought as a class action." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 978.) This requirement has never been imposed with regard to requests to enjoin future wrongful business practices that will injure the public, and we find nothing in the ballot materials for Proposition 64 suggesting an intent to link or restrict such relief to the class action context. Indeed, imposing this requirement would largely eliminate the ability of a private plaintiff to pursue such relief, because class certification requires "the existence of both an ascertainable class and a well-defined community of interest among the class members" (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913), and " 'the general public' . . . fails to meet" this requirement (*Czap v. Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1, 6).

Supporting this conclusion is our 2000 decision in *Kraus v. Trinity Management Services*, *Inc.* (2000) 23 Cal.4th 116, 121, which explained that under the UCL's then-existing standing provision, not all actions "brought on behalf of absent persons by a private party" had to be "certified as a class action." After noting that that standing provision authorized " '[a]ny person acting for the interests of itself, its members or the general public' . . . [to] seek UCL relief on behalf of the general public," we stated: "We use the term '*representative* action' to refer to a UCL action that is not certified as a class action in which a private person is the plaintiff and *seeks disgorgement and/or restitution* on behalf of persons other than or in addition to the plaintiff." (*Kraus*, at p. 126, fn. 10, italics added.) It seems likely that when the voters, just a few years later in 2004, revised the UCL's standing provisions to require "representative claims" to be brought as class actions (Bus. & Prof. Code, § 17203), they had in mind, not an action requesting public injunctive relief, but the kind of " 'representative action' " we discussed in *Kraus*, i.e., "a UCL action that is not certified as a class action in which a private person is the plaintiff and seeks *disgorgement and/or restitution*

13

on behalf of persons other than or in addition to the plaintiff." (*Kraus*, at p. 126, fn. 10, italics added.)

Having determined that public injunctive relief remains a remedy available to private plaintiffs under the UCL and the false advertising law, as well as under the CLRA, we next conclude that the arbitration provision here at issue is invalid and unenforceable under state law insofar as it purports to waive McGill's statutory right to seek such relief. Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Consistent with this provision, we have explained that "a party may waive a statutory provision if a statute does not prohibit doing so [citation], the statute's 'public benefit . . . is merely incidental to [its] primary purpose' [citation], and 'waiver does not seriously compromise any public purpose that [the statute was] intended to serve' [citation]." (*DeBerard Properties*, *Ltd. v. Lim* (1999) 20 Cal.4th 659, 668-669.) By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law, as discussed in *Broughton* and *Cruz*, is primarily "for the benefit of the general public." (*Broughton*, *supra*, 21 Cal.4th at p. 1082; see *Cruz*, *supra*, 30 Cal.4th at p. 315.) Its "evident purpose," the court said in *Broughton*, is "to remedy a public wrong," "not to resolve a private dispute" (*Broughton*, at p. 1080), and any benefit to the plaintiff requesting such relief "likely . . . would be incidental to the general public benefit of enjoining such a practice." (*Id*. at p. 1080, fn. 5.) Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

Citibank does not argue that the waiver is valid under California law. Instead, it argues that a California rule precluding enforcement of the waiver

14

would be preempted by the FAA. According to Citibank, the FAA requires enforcement of the arbitration provision "as written, regardless of what it says or implies about claims seeking public injunctive relief." "[A] court," Citibank asserts, "may not avoid the FAA by applying state-law rules of contract interpretation to limit the scope of an agreement to arbitrate."

We reject Citibank's overbroad view of the FAA. As Citibank observes, the high court has stated that section 2 of the FAA requires courts to "place arbitration agreements on an equal footing with other contracts [citation] and [to] enforce them according to their terms." (*Concepcion*, *supra*, 563 U.S. at p. 339.) However, the high court has qualified this statement by reference to "[t]he final phrase of § 2," which is known as the FAA's "saving clause" and which "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' " (*Concepcion*, at p. 339.) This clause, the high court has stated, "indicates" that Congress's "purpose" in enacting the FAA "was to make arbitration agreements as enforceable as other contracts, *but not more so*." (*Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 404, fn. 12, italics added (*Prima Paint*).) Thus, arbitration agreements, "[l]ike other contracts," "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68.) They may not, however, be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Concepcion*, at p. 339.)

The contract defense at issue here — "a law established for a public reason cannot be contravened by a private agreement" (Civ. Code, § 3513) — *is* a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1079 (*Little*) ["long-standing ground for refusing to enforce a contractual term is that it would force a party to forgo unwaivable public rights"].) It is not a defense that applies only to arbitration or that derives its meaning from the fact that an

15

agreement to arbitrate is at issue. As explained above, a provision in *any* contract — even a contract that has no arbitration provision — that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law. The FAA does not require enforcement of such a provision, in derogation of this generally applicable contract defense, merely because the provision has been inserted into an arbitration agreement. To conclude otherwise would, contrary to Congress's intent, make arbitration agreements not merely "as enforceable as other contracts, but . . . more so." (*Prima Paint*, *supra*, 388 U.S. at p. 404, fn. 12.)

Our conclusion is consistent with the high court's statement that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.* (1985) 473 U.S. 614, 628.) This statement, this court has said, "is as much prescriptive as it is descriptive. That is, it sets a standard by which arbitration agreements and practices are to be measured, and disallows forms of arbitration that in fact compel claimants to forfeit certain substantive statutory rights." (*Armendariz v. Foundation Health Psychcare Services*, *Inc.* (2000) 24 Cal.4th 83, 99-100.) Likewise, the high court has recently indicated that the FAA does not require enforcement of a provision in an arbitration agreement that "forbid[s] the assertion of certain statutory rights" or that "eliminates . . . [the] right to pursue [a] statutory remedy." (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. __, __ [133 S.Ct. 2304, 2310-2311] (*Italian Colors*); see *Mitsubishi Motors Corp.*, at p. 637, fn. 19 ["[I]n the event the [arbitration] and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."].) Consistent with this principle, we have held that the FAA does not require enforcement of a provision

16

in an arbitration agreement that, in violation of generally applicable California contract law, "limit[s] statutorily imposed remedies such as punitive damages and attorney fees." (*Armendariz*, at p. 103.)  Here, we likewise conclude that the FAA does not require enforcement of a provision in a predispute arbitration agreement that, in violation of generally applicable California contract law, waives the right to seek *in any forum* public injunctive relief under the UCL, the CLRA, or the false advertising law.

Citibank argues that the above principles apply only when enforcement of an arbitration agreement would lead to forfeiture of a *federal* statutory right.  This is so, Citibank asserts, because only *federal* statutes "stand on equal footing with and therefore *modify* the FAA, whereas a state law that is in conflict with federal law is *preempted by* the FAA."

Citibank's argument is inconsistent with high court authority.  In *Preston v. Ferrer* (2008) 552 U.S. 346, 349-350, the high court held that the FAA preempts state laws that lodge in a judicial or administrative forum primary jurisdiction over claims the parties have agreed to arbitrate.  In stating its reasoning, the court explained in part:  "[I]t bears repeating that [the petition to arbitrate] presents precisely and only a question concerning the forum in which the parties' dispute will be heard.  [Citation.]  'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.'  [Citation.]  So here, [the party resisting arbitration] relinquishes no substantive rights the [California Talent Agencies Act] or other California law may accord him.  But under the contract he signed, he cannot escape resolution of those rights in an arbitral . . . forum.' "  (*Preston*, at p. 359.)  This discussion would make no sense if, as Citibank asserts, the fact an arbitration agreement purports to waive a substantive right under state law were irrelevant to whether the FAA requires the agreement's enforcement.

More fundamentally, Citibank's argument misunderstands the nature of the FAA's saving clause.  As noted above, that clause provides that an arbitration

17

agreement may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The high court has explained that this clause "explicitly retains an external body of [state] law governing revocation." (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 630.) Under it, " '[s]tate law' . . . is applicable to determine which contracts are binding . . . and enforceable under" the FAA, " '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' " (*Arthur Andersen*, at pp. 630-631.) As previously explained, the contract defense to the waiver at issue here — "a law established for a public reason cannot be contravened by a private agreement" (Civ. Code, § 3513) — *is* a "ground[]" that "exist[s]" under California law "for the revocation of any contract." (9 U.S.C. § 2; see *Little*, *supra*, 29 Cal.4th at p. 1079.) Thus, applying this defense to invalidate the waiver does not "*modify* the FAA," as Citibank asserts; it *implements* the FAA *as written*.

Supporting this analysis is the high court's decision in *Concepcion*, a decision on which Citibank heavily relies. There, the high court held that the FAA preempts the California rule, announced by a majority of this court in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), that certain waivers of classwide arbitration procedures are unconscionable and unenforceable. (*Concepcion*, *supra*, 563 U.S. at p. 352.) In announcing this rule, the *Discover Bank* majority held that the rule is permissible under the FAA's saving clause because it is simply a specific application of the following "principle of California law that" governs "contracts generally": "class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory." (*Discover Bank*, at p. 165.) Were Citibank's argument correct, the high court, in finding preemption, would have simply said that generally applicable principles of *state* contract law may never overcome the FAA's requirement that arbitration agreements be enforced according to their terms. Instead, the high court *reaffirmed* that the "saving clause permits agreements to arbitrate to be invalidated by 'generally

18

applicable contract defenses' " under *state* law (*Concepcion*, at p. 339), and the court looked specifically to "California law" on unconscionability in first evaluating the *Discover Bank* rule's validity (*Concepcion*, at p. 340). The court then added that the FAA preempts even a "generally applicable" state law contract defense if that defense (1) is "applied in a fashion that disfavors arbitration" (*Concepcion*, at p. 341), or (2) "interferes with fundamental attributes of arbitration" (*id*. at p. 344), such as " 'lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes' " (*id*. at p. 348). The *Discover Bank* rule fails the latter test, the high court held, because by requiring a class arbitration procedure, the rule (1) "sacrifices" arbitration's "informality" (*Concepcion*, at p. 348), (2) "makes the process slower, more costly, and more likely to generate procedural morass than final judgment" (*ibid*.), (3) "*requires* procedural formality" (*id*. at p. 349), and (4) "greatly increases risks to defendants" (*id.* at p. 350).

Citibank argues that the antiwaiver rule at issue here interferes with the fundamental attributes of arbitration in the same way as the *Discover Bank* antiwaiver rule regarding class procedures. "As a practical matter," Citibank asserts, "there is little difference between broad-based public injunctions and the class-wide relief at the heart of" the *Discover Bank* rule that *Concepcion* invalidated. "Neither is necessary nor intended to protect an individual's rights; rather, both aim to provide relief on behalf of others that are not parties to the proceeding in question. Both necessarily transform arbitration from a procedure involving distinct parties into a procedure involving and/or affecting numerous other unknown persons, with the stakes in public injunctive relief actions often just as great as the stakes in class actions." Moreover, "broad-based injunctive relief and class actions both impose procedures in addition to the arbitration itself. These violate the FAA"s 'prime objective' of 'streamlined proceedings and expeditious results.' " Thus, Citibank asserts, no basis exists "to draw a distinction between class claims and public injunctions."

19

For several reasons, Citibank's argument fails. First, contrary to Citibank's assertion, *Concepcion* and its high court progeny actually *support* the "draw[ing]" of "a distinction between class claims and public injunctions." The latter is a *substantive statutory remedy* that the Legislature, through the UCL, the CLRA, and the false advertising law, has made available to those, like McGill, who meet the statutory standing requirements for filing a private action. A class action, by contrast, "is a *procedural* device that enforces *substantive* law by aggregating many individual claims into a single claim . . . . It does not change that substantive law." (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 313, italics added; see *Deposit Guaranty Nat. Bank*, *Jackson*, *Miss. v. Roper* (1980) 445 U.S. 326, 332 [right to use federal class action procedure "is a procedural right only, ancillary to the litigation of substantive claims"].) In *Italian Colors*, *supra*, 570 U.S. at page __ [133 S.Ct. at p. 2312], the high court, drawing on *Concepcion*, held that the FAA requires enforcement of an arbitration provision that precludes class arbitration of federal antitrust claims. In reaching this conclusion, the court distinguished between the " 'waiver of a party's *right to pursue statutory remedies*' " — such as "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" (*Italian Colors*, at pp. ____ [133 S.Ct. at pp. 2307, 2310], italics added) — and the waiver of a "*procedural path* to the vindication of every claim" — such as a provision forbidding class action arbitration (*id.* at p. __ [133 S.Ct. at p. 2309], italics added). Even though a class arbitration waiver may make the statutory remedy "not worth the expense" of pursuing, because the waiver does "not constitute the elimination of the *right to pursue* that remedy," the FAA requires its enforcement. (*Italian Colors*, at p. __ [133 S.Ct. at p. 2307].) Under *Italian Colors*, because the waiver at issue here is a waiver of the right *to pursue statutory remedies* — rather than of a *procedural path* to vindicating the statutory claim — it is, contrary to *Citibank*'s assertion, distinguishable from a waiver of class procedures.

Second, invalidation of the waiver will not, as Citibank asserts, interfere with any of arbitration's attributes. "Arbitration under the [FAA] is a matter of consent, not coercion, and parties . . . may limit by contract the issues [that] they will arbitrate." (*Volt Info. Sciences v. Leland Stanford Jr. U*. (1989) 489 U.S. 468, 479.) The FAA "does not . . . prevent parties who . . . agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." (*Id*. at p. 478.) Here, the parties agree that they "elected in the Arbitration Agreement to exclude public injunctive relief [requests] from arbitration," and we are not holding that McGill's requests for such relief must, contrary to the parties' agreement, be arbitrated. Moreover, case law establishes that a stay of proceedings as to any inarbitrable claims is appropriate until arbitration of any arbitrable claims is concluded. (*Cruz*, *supra*, 30 Cal.4th at p. 320.) Thus, arbitration of claims the parties *have agreed* to arbitrate may proceed pursuant to whatever procedures the arbitration agreement specifies, unaffected by any subsequent proceedings made necessary by invalidation of the waiver regarding the public injunctive relief claims the parties *did not agree to arbitrate*. According to the high court, " 'piecemeal' litigation" of claims the parties have agreed to arbitrate and claims they have not agreed to arbitrate is *consistent* with the FAA. (*Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 221.) In *Broughton*, *supra*, 21 Cal.4th at page 1088, this court extended this principle to piecemeal litigation of "arbitrable and inarbitrable remedies derived from the same statutory claim." We therefore reject Citibank's assertion that "*post*-arbitration judicial or other procedures" to resolve requests for statutory relief the parties did not agree to arbitrate would "violate the FAA's objectives."

Our invalidation of the arbitration provision insofar as it purports to waive McGill's statutory right to seek public injunctive relief in any forum gives rise, under the terms of the parties' agreement, to the following question: Is the rest of the provision enforceable? The arbitration provision contained in the 2001 Notice stated: "If any portion of the arbitration provision is deemed invalid or

21

unenforceable, the entire arbitration provision shall *nevertheless* remain in force." (Italics added.) However, the arbitration provision set forth in the 2005 Notice and the 2007 account agreement states: "If any portion of the arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall *not* remain in force." (Italics added.) Because the parties have not mentioned, let alone discussed, this language, we do not decide whether, in light of our holding, it renders the remainder of the arbitration provision unenforceable. But because our holding raises this question, we need not detail each respect in which McGill's injunctive relief request constitutes a request for public injunctive relief. We leave these issues to the Court of Appeal on remand, should the parties raise them and should the court find it necessary to decide them.

### III. DISPOSITION

The Court of Appeal's judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.


**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**HALLER, J.***

_____
\*      Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** McGill v. Citibank, N.A.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 232 Cal.App.4th 753
**Rehearing Granted**

_____

**Opinion No.** S224086
**Date Filed:** April 6, 2017
_____

**Court:** Superior
**County:** Riverside
**Judge:** John W. Vineyard, Temporary Judge*

_____

**Counsel:**

Stroock & Stroock & Lavan, Julia B. Strickland, Stephen J. Newman, David W. Moon and Marcos D. Sasso for Defendant and Appellant.

Horvitz & Levy, Lisa Perrochet, John F. Querio and Felix Shafir for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Leland Chan for California Bankers Association as Amicus Curiae on behalf of Defendant and Appellant.

Haynes and Boone and Mary-Christine Sungaila for International Association of Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.

Mayer Brown, Andrew J. Pincus, Archis A. Parasharami and Donald M. Falk for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendant and Appellant.

Capstone Law, Raul Perez, Melissa Grant, Glenn A. Danas, Ryan H. Wu, Liana Carter and Katherine W. Kehr for Plaintiff & Respondent.

Scott L. Nelson; Chavez & Gertler, Mark A. Chavez and Nance F. Becker for Public Citizen, Inc., as Amicus Curiae on behalf of Plaintiff and Respondent.

Barbara Jones for AARP as Amicus Curiae on behalf of Plaintiff and Respondent.

*Pursuant to California Constitution, article VI, section 21.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Julia B. Strickland
Stroock & Stroock & Lavan
2029 Century Park East, Suite 1800
Los Angeles, CA 90067
(310) 556-5800

Glenn A. Danas
Capstone Law
1840 Century Park East, Suite 450
Los Angeles, CA 90067
(310) 556-4811